# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **S.R. and A.S.**

**No. 19-0189** (Randolph County 2017-JA-062 and 2018-JA-090)

**FILED**

**June 12, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother N.S., by counsel Melissa T. Roman, appeals the Circuit Court of Randolph County's January 15, 2019, order terminating her parental rights to S.R. and A.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Heather M. Weese, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2017, the DHHR filed an abuse and neglect petition that alleged that petitioner tested positive for benzodiazepines twice during her pregnancy with S.R. and lied to hospital staff about whether she had a valid prescription that would explain the positive screens. Further, the DHHR alleged that the child's father was incarcerated for failure to register as a sex offender, which he was required to do for life pursuant to a conviction of sexual assault of a child. Additionally, the DHHR alleged that petitioner voluntarily relinquished her parental rights to four older children not at issue in this appeal during a prior abuse and neglect proceeding. The underlying issues in the prior proceeding related to domestic violence and failure to meet the children's basic needs and seek medical care. Specifically, during the prior proceedings, an infant child was diagnosed with failure to thrive. Despite the fact that the infant was six months old, he

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

"had no muscle tone throughout his body" and "had to be held like an infant" because he could not support his own head. According to the DHHR, during the prior proceeding, petitioner received extensive services through the Birth to Three program but did not keep her scheduled appointments or "apply the material that she was taught." Petitioner later waived her preliminary hearing. Following an adjudicatory hearing in June of 2018, the circuit court adjudicated petitioner as an abusive and neglectful parent due to her inability to safely care for the child.

In July of 2018, the DHHR filed an additional petition subsequent to the birth of A.S. According to the petition, petitioner was incapable of caring for the child, which required "[n]ursing staff . . . to intervene and have multiple conversations on how she [was not] properly feeding the infant." The DHHR further alleged that, during the pregnancy, petitioner was dishonest about the child, having "first . . . contacted the [DHHR] stating that she was a surrogate for someone," although she failed to indicate for whom she was serving in this role. Petitioner then informed the DHHR that she would give the child to a family member to raise, although she failed to identify to whom she would give the child. Petitioner later waived the preliminary hearing on this petition. Following an adjudicatory hearing in October of 2018, the circuit court adjudicated petitioner as an abusive and neglectful parent in regard to A.S. due to her inability to provide the child with adequate care or ensure her safety. Following this hearing, petitioner filed a motion for a post-adjudicatory improvement period.

In December of 2018, the circuit court held a dispositional hearing. Based on the evidence submitted, the circuit court found that petitioner "ha[d] not participated in services or classes since 2015" when they were provided pursuant to her prior abuse and neglect proceeding. Additionally, a service provider testified that, because of petitioner's inability to properly and safely care for the children, "she would not be comfortable leaving children alone in [petitioner's] care." Moreover, in regard to her request for an improvement period, the circuit court found that petitioner's past involvement with services constituted "superficial participation without internalization," which resulted in her continued inability "to render independent child care following the completion of services." As such, the circuit court denied the motion. Ultimately, because petitioner was unable "to provide safe care and protection for the children," the circuit court found that there was no option other than termination of her parental rights in order to ensure the children's safety and welfare. As such, the circuit court terminated petitioner's parental rights to the children.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there

---

[2]All parents' parental rights were either voluntarily relinquished or terminated below. According to respondents, the permanency plan for both children is adoption in their respective foster homes.

is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). On appeal, we find no error in the proceedings below.

Petitioner's lone assignment of error is that the circuit court erred in terminating her parental rights because she should have been entitled to an improvement period due to the steps she had taken to remedy the conditions that necessitated the petition's filing and because the conditions of abuse and neglect were correctable.[3] We do not agree. In regard to petitioner's assertion that she was entitled to a post-adjudicatory improvement period, we note that the circuit court specifically found that "even though [petitioner] completed classes in the past," she was unable to remedy the conditions of abuse and neglect from her prior proceeding that persisted through the current matter. According to the circuit court, petitioner's past participation constituted "superficial participation" in which petitioner was unable to internalize what she learned and was incapable of "render[ing] independent child care following the completion of services." Accordingly, the circuit court found that petitioner was not entitled to an improvement period.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); syl. pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the

---

[3]In her brief on appeal, petitioner sets forth her assignment of error in two separate ways. Upon first reference, petitioner's assignment of error alleges that termination was improper because "[t]he conditions of abuse and neglect were correctable in the near future and [she] was taking steps to remedy those issues." As such, she concludes that termination was an abuse of discretion and not in the children's best interests. At another point in her brief, petitioner's assignment of error is set forth as follows: "The Circuit Court Erred by Terminating [Petitioner's] Parental Rights Because the [DHHR] Made No Reasonable Efforts to Reunify the Family." In her argument in support of her assignment of error, petitioner makes reference to her testimony, wherein she asserted that the DHHR "had offered no services to reunify her with her children, although she would be willing to participate" in such services. However, petitioner does not challenge the circuit court's finding, at adjudication, that the specific circumstances of this case "constitute[] aggravated circumstances." Pursuant to West Virginia Code § 49-4-604(b)(7)(A), "the [DHHR] is not required to make reasonable efforts to preserve the family if the court determines . . . [t]he parent has subjected the child, another child of the parent or any other child residing in the same household . . . to aggravated circumstances." Because petitioner does not challenge the circuit court's ruling in this regard, we find that she cannot be entitled to relief for any alleged failure to provide her with remedial services. The record and the law are clear that the circuit court found aggravated circumstances existed below and that such a finding absolves the DHHR of its statutory responsibility to preserve the family.

court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the parent/respondent to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period.'" *In re: Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004).

While petitioner cites to her testimony concerning her willingness to participate in services, she fails to recognize that the circuit court found that her noncompliance, in the form of her inability to actually implement what she was taught, precluded the granting of an improvement period. The circuit court's findings illustrate the fact that, although she may have gone through the motions of an improvement period, petitioner could not comply with the terms and conditions imposed because of her inability to adjust her behavior based on the instructions provided. As such, it is clear that the circuit court did not err in denying petitioner's motion for a post-adjudicatory improvement period.

Finally, we find no error in the termination of petitioner's parental rights. According to petitioner, the circuit court erred in finding there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected because she was actively taking steps to correct these issues, such as obtaining suitable housing. Again, this argument is not supported by the record. Pursuant to West Virginia Code § 49-4-604(c), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Here, the circuit court made this finding upon substantial evidence, noting that petitioner, "even though making efforts, is not able to provide safe care and protection for the children." Because of petitioner's inability to apply what she was taught through remedial services, as demonstrated in her prior abuse and neglect proceeding and evidenced by the continuation of those same conditions, the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future was not in error.

Moreover, the circuit court found that termination of petitioner's parental rights was necessary for the children's welfare because they "need continuity in care and caretakers" and to be "integrated into a stable and permanent home environment." According to West Virginia Code § 49-4-604(b)(6), circuit courts may terminate parental rights upon these findings. Additionally, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, termination of petitioner's parental rights was not in error.

4

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 15, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 12, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison